[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2008
THOMAS K. KAHN
CLERK

————————————

No. 07-10326

————————————

D. C. Docket No. 06-00036 CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALAN MOORE and
GREGORY DIXON,

Defendants-Appellants.

————————————

Appeals from the United States District Court
for the Northern District of Florida

————————————

**(April 22, 2008)**

Before EDMONDSON, Chief Judge, KRAVITCH and ALARCÓN,[*] Circuit
Judges.

_____

[*] Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

ALARCÓN, Circuit Judge:

Officer Alan Moore and Officer Gregory Dixon seek reversal of their convictions following trial by jury. Officer Moore and Officer Dixon contend that the evidence was insufficient to prove a conviction of conspiracy to accept an illegal gratuity and an "official act." They also assert that there was a material variance between the allegations of conspiracy in the indictment and the evidence produced at trial. They argue that the Government failed to prove a single conspiracy as alleged in the indictment and the District Court erred in its conspiracy instructions.

Officer Dixon also asserts that the District Court erred in its instructions on the elements of bribery. Officer Moore maintains that the evidence was insufficient to support his conviction for witness tampering.

We affirm because we conclude that the District Court properly rejected these contentions.

**I**

Appellants Alan Moore and Gregory Dixon were correctional officers at the Federal Correctional Institute in Tallahasse, Florida, a women's institution, on the dates the crimes in the indictment were alleged to have occurred. Officer Moore

and Officer Dixon, along with four other correctional officers, were charged with a variety of misconduct arising from their inappropriate sexual contact with female inmates and their distribution of contraband to inmates. Officer Moore and Officer Dixon pled not guilty. Their four co-defendants pled guilty.

At trial, the Government produced evidence that Officer Moore and Officer Dixon engaged in sexual acts with various inmates in exchange for contraband. Furthermore, the Government presented evidence that the officers assisted each other in gaining access to the inmates, so that they could engage in sexual acts with them. The officers switched assignments, gave keys to other officers to staff offices so that they could meet with the inmates in private, and permitted inmates to leave their cells to meet with other officers. Additionally, the officers had an unspoken agreement that they would not report their illicit activities.

Officer Moore was found guilty of conspiracy to accept an illegal gratuity, the lesser included offense of the charge of conspiracy to commit bribery alleged in Count One, and witness tampering as alleged in Count Seventeen. R267. Also, the jury convicted Officer Moore of accepting an illegal gratuity, a lesser included offense of the crime of bribery alleged in Count Sixteen. The District Court granted judgment of acquittal of that lesser included offense, notwithstanding the jury's guilty verdict. R267. Officer Moore was sentenced on Count One and

3

Count Seventeen to twelve months of incarceration, to run concurrently, followed by a three-year term of supervised release, and ordered to pay a $6,000 fine. R267.

Officer Dixon was found guilty of conspiracy to accept an illegal gratuity, a lesser included offense of the crime of conspiracy to commit bribery alleged in Count One, and bribery, the charges alleged in Counts Nine through Eleven. R265. Officer Dixon was sentenced to twelve months of imprisonment on Counts One, Nine, Ten, and Eleven, to run concurrently, followed by a three-year term of supervised release. He was also ordered to pay a $3,000 fine. R265. Officer Moore and Officer Dixon filed timely notices of appeal. R258, 260.

## II

### A

Officer Moore and Officer Dixon argue that there was insufficient evidence to convict them of conspiracy to accept an illegal gratuity pursuant to 18 U.S.C. § 201(c)(1)(B). To prove a violation of § 201(c)(1)(B), the Government must establish that:

> a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any

4

official act performed or to be performed by such official or person.

18 U.S.C. § 201(c)(1)(B). They argue that there was insufficient evidence of an agreement to receive something of value.

The question of whether the evidence was sufficient to support a conviction is reviewed *de novo*. *United States v. Harris,* 20 F.3d 445, 452 (11th Cir. 1994). "Although we conduct our review without special deference to the district court, we review the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* (citations omitted).

> To sustain a verdict of guilt the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, as long as a reasonable factfinder choosing from among reasonable constructions of the evidence could find that the evidence establishes guilt beyond a reasonable doubt.

*United States v. Sepulveda,* 115 F.3d 882, 888 (11th Cir. 1997) (citations omitted). Conflicting testimony is an issue of credibility left to the fact finder to determine. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

**1**

Officer Moore and Officer Dixon argue that the testimony of Officer Alfred

Barnes does not establish the existence of an agreement between the officers. Dixon Br. at 14-15. The Government argues that Officer Barnes's testimony established that an agreement existed between the guards. Gov't Br. at 30-31. We agree.

"The elements of the offense of conspiracy are: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006) (citation omitted). While an agreement is always required for conviction of conspiracy, the Government is not required to demonstrate the existence of a "formal agreement." *Id.* Instead, an agreement may be demonstrated by circumstantial evidence of a meeting of the minds to commit an unlawful act. *Id*. Proof that the accused committed an act which furthered the purpose of the conspiracy is an example of the type of circumstantial evidence the Government may introduce to prove the existence of an agreement. *United States v. Sullivan*, 763 F.2d 1215, 1218-19 (11th Cir. 1985).

The circumstantial evidence presented at trial was sufficient for a rational fact finder to infer the existence of an agreement between the officers. Inmate Shonnie D. testified that Officer Moore gave Officer Barnes the keys to the staff office area so he could meet with inmate Shonnie D. in the middle of the night to

perform a sexual act. R313 at 221-23. Inmate Shonnie D. also testified that Officer Moore permitted her to leave her unit to visit Officer Barnes. R313 at 218-19. Additionally, Officer Barnes testified that Officer Moore knew that Officer Barnes engaged in sexual intercourse with inmate Shonnie D. R315 at 783. Officer Barnes stated that he and Officer Moore had an "understanding" that they would not turn each other in. R315 at 845.

Officer Barnes testified that there was a mutual unstated understanding to switch assignments so Officer Dixon could see inmate Sabrina B., and Officer Barnes could avoid inmate Shonnie D. in order to prevent the sex for contraband scheme from being discovered. R315 at 845-46. Officer Barnes further testified that Officer Dixon explained to him how to make money bringing in contraband for inmates who could be trusted.

Officer Moore and Officer Dixon correctly note that Officer Barnes gave conflicting testimony about the agreement that existed between the guards. Dixon Br. at 13-15, citing R315 at 828-29. When Officer Barnes gave conflicting testimony, his credibility as a witness became a question of fact for the jury to decide. Here, the jury determined his testimony was believable. *See Ramirez-Chilel*, 289 F.3d at 749 (holding that the Court must give deference to the fact finder's determination of credibility unless it is "unbelievable"). We conclude

7

from the evidence in this record that there was sufficient circumstantial evidence that Officer Moore and Officer Dixon had an agreement to participate in a sex-for-contraband conspiracy.

## 2

Officer Moore and Officer Dixon contend that there was insufficient evidence that an "official act" occurred. For purposes of § 201(c)(1)(B), an "official act" is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3).

Officer Moore and Officer Dixon cite to *Valdes v. United States*, 475 F.3d 1319 (D.C. Cir. 2007), in support of their contention that the Government failed to present evidence of an "official act." *Valdes* involved moonlighting police officers who looked up information on a criminal database in exchange for cash. *Id.* at 1321-22. The *Valdes* court held these inqueries did not rise to the level of issues that the Government normally resolves, like the question of whether the police should investigate a person or not. *Id.* at 1325-26. The court defined "official act" in the negative, stating that "precedent and the language of the statute make clear that § 201 is not about officials' moonlighting, or their misuse

of government resources, or the two in combination." *Id.* at 1324. Under *Valdes*, an "official act" is narrowly construed as applying to significant "pending" Government issues that may be brought "by law" before a public official. *Id.*

Officer Moore and Officer Dixon argue that the "low-level actions alleged in this case" are similar to those of the police officer in *Valdes* and that, therefore, their conviction should be overturned. Dixon Br. at 19. In relying on *Valdes*, however, they ignore relevant Supreme Court precedent. In *United States v. Birdsall*, 233 U.S. 223 (1909), the Court interpreted the "official act" requirement of the precursor to § 201. *Id.* at 231. The Court held that "[t]o constitute it official action, it was not necessary that it should be prescribed by statute." *Id.* at 230-31. Official action can be "clearly established by settled practice." *Id.* at 231. In addition, the scope of official conduct may be found in "established usage." *Id.* The Court held in *Birdsall* that "[e]very action that is within the range of official duty comes within the purview of these sections." *Id.* at 230. The dissenting opinion in *Valdes* asserts that Supreme Court precedent should have prevented the D.C. Circuit from narrowly construing the definition of an official act. *Valdes*, 475 F.3d at 1331 (Henderson, J., dissenting) (citing *U.S. v. Birdsall*, 233 U.S. 223 (1909). Judge Henderson also noted in *Valdes* that because *Birdsall* has never been overruled, and because the precursor to § 201 contains the same definition of

9

an official action, *Birdsall* is the controlling precedent. *Valdes*, 475 F.3d at 1331-32 (Henderson, J., dissenting).

*Birdsall* was followed by the Second Circuit as recently as 1988. In *United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988), the court held that a United States Congressman engaged in official acts within the meaning of 18 U.S.C. § 201(b)(1)(B) when he wrote letters on his congressional stationary on behalf of a party who had paid for his vacations, and urged federal and city officials to take action favorable to that party. *Id* at 97-98. The *Biaggi* court held that even though the Congressman's actions were non-legislative, his conduct constituted an official act under the broad definition of *Birdsall*. *Id.*

Having established that a broader definition of "official act" is the controlling precedent, we now must determine whether a reasonable fact finder could have concluded beyond a reasonable doubt that an official act took place. The Government offered evidence of five instances which satisfied the official act requirement: (1) Officers Dixon and Barnes switched unit assignments; (2) Officer Dixon permitted inmate Sabrina B. to telephone Officer Barnes to request contraband; (3) Officer Moore telephoned Officer Barnes on inmate Shonnie D.'s behalf; (4) Officer Moore permitted inmate Shonnie D. to leave her unit to meet with Officer Barnes; and (5) Officer Moore gave Officer Barnes the key to staff

offices to meet with inmate Shonnie D. in the middle of the night. All of these actions fall within the broad definition of "official act" set forth in *Birdsall*. Thus, there was sufficient evidence that the conduct of Officer Moore and Officer Dixon constituted an "official act."

**B**

Officer Moore and Officer Dixon argue that their convictions should be overturned because a material variance existed between the superseding indictment and the evidence produced at trial. They contend that the evidence presented at trial established multiple uncharged conspiracies rather than one single conspiracy, as charged in the superceding indictment. After reviewing the evidence, we conclude that there was substantial evidence that a single conspiracy to exchange sex for contraband existed.

"A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir.1996), *cert. denied,* 519 U.S. 1118 (1997). Because the jury determines the question of fact as to whether the evidence establishes a single conspiracy, the arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the

11

Government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt. *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993). Accordingly, we will not disturb the determination of the jury that a single conspiracy exists if supported by substantial evidence. *United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997).

In determining whether a jury could have found a single conspiracy, this Court considers: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants. *Id*. "Separate transactions are not necessarily separate conspiracies, so long as the conspirators act in *concert* to further a common goal." *United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004) (citation omitted). If "a defendant's actions facilitated the endeavors of other co-conspirators, or *facilitated the venture as a whole*," a single conspiracy is established. *Id.* It is irrelevant that the particular co-conspirators did not participate in every stage of the conspiracy. *United States v. Alred*, 144 F.3d 1405, 1415 (11th Cir. 1998).

**1**

Courts typically define the common goal element as broadly as possible. *See United States v. Edouard*, 485 F.3d 1324, 1347-48 (11th Cir. 2007) (holding that the three different methods of bringing cocaine into the United States all fell

under the broader goal of bringing cocaine into the United States). Furthermore, the word "common," has repeatedly been defined as "similar" or "substantially the same." *Calderon*, 127 F.3d at 1327.

With regard to Officer Dixon's conduct, the evidence produced at trial suggests that he was involved in the common goal of trading sex with inmates for contraband. The evidence shows that: (1) the circumstances were sufficient to support an inference that the guards had an unspoken mutual agreement among each other not to report each other's wrongdoing; (2) Officer Dixon explained to Officer Barnes how to make money bringing in contraband for inmates who could be trusted; (3) Officers Barnes and Dixon switched unit assignments so Officer Dixon could engage in sexual relations with inmate Sabrina B.; (4) Officer Dixon questioned inmate Latoya B. whether she was cooperating against co-defendant Officer Hill and warned her that inmates who talk get sent to other institutions; and (5) Officer Dixon told inmate Patricia P. he had sex with inmates Demetrius C. and Deyandra D.

The evidence established that Officer Moore was also involved in the common goal of trading sex with inmates for contraband. The evidence shows that: (1) Officer Moore gave Officer Barnes the keys to the staff office area so that Officer Barnes could have sex with inmate Shonnie D.; (2) Officer Moore told

13

Officer Barnes he knew that Officer Barnes had engaged in sexual relations with inmate Shonnie D.; (3) Officer Moore permitted inmate Shonnie D. to leave her unit to visit Officer Barnes; and (4) Officer Moore sent inmate Delores H. to another unit to meet with Officer Barnes, where Officer Barnes provided her with contraband.

Taken together this evidence suggests that both Officer Moore and Officer Dixon were participating in a system of delivering contraband to inmates in return for sex, were aware that other guards were involved in similar undertakings, did not report the other guards, and engaged in witness tampering to preserve the sex for contraband system. Thus, there was sufficient evidence that both Officer Moore and Officer Dixon had the common goal of trading sex with inmates for contraband.

**2**

We must also determine whether the record shows that there was an underlying scheme. *See Alred*, 144 F.3d at 1415 (noting that what were allegedly multiple conspiracies were virtually the same); *Calderon*, 127 F.3d at 1329 (holding that there was an underlying scheme to import and distribute cocaine because the "importation was accomplished over a relatively short amount of time, aboard the same vessel, in the same manner, and from the same supplier").

14

Here, testimony established that both officers exchanged sex for contraband with the inmates, switched assignments to facilitate similar sex for contraband exchanges with the inmates, engaged in similar conduct with multiple inmates, threatened inmates who might report their behavior, and declined to turn in guards who had committed similar acts. All of these actions took place within the same prison location. Further, the officers achieved the common goal in the same manner; the guards gave contraband to inmates in exchange for sexual acts.

**3**

The record shows that there was extensive evidence of overlap between the guards. Evidence was presented that guards were involved in sex for contraband arrangements with the same inmates. For example, Officer Dixon had sex with inmates Sabrina B., Letishe M., and Demetrius C. Officer Moore had sex with inmates Shonnie D. and Sabrina B. Officer Barnes had sex with inmates Shonnie D., Sabrina B., and Latoya B. R315 at 741-65, 768, 789-90.

This evidence shows that multiple guards had overlapping arrangements with the same inmates as part of a scheme to trade sex with the inmates for contraband. Therefore, because all three elements required for a single conspiracy have been established, the conviction should not be overturned on the basis of variance.

15

## C

In a related, but somewhat different argument than the variance claim, Officer Moore and Officer Dixon contend that the district judge erred in refusing to give the jury a multiple conspiracies instruction. They argue that the District Court erred by failing to give a multiple conspiracy jury instruction in light of what they allege was evidence of multiple conspiracies. The Government argues that a multiple conspiracy jury instruction was not necessary because there was insufficient evidence from which a reasonable jury could conclude that some of the alleged co-conspirators were involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment. We agree.

> Generally, a multiple conspiracies instruction is required where "the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could *reasonably conclude* that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment."

*Calderon*, 127 F.3d at 1328 (quoting *United States v. Laetividal-Gonzales*, 939 F.2d 1455, 1465 (11th Cir. 1991)) (emphasis in original) (citations omitted). This claim differs from the variance claim in that the question was whether a reasonable jury could have concluded beyond a reasonable doubt that a single conspiracy existed. On the other hand, the issue to be resolved here is whether that same jury

16

could also have reasonably concluded from the evidence that multiple conspiracies, rather than the single charged conspiracy, existed. *Id*. at 1329. "The issue of whether the defense produced sufficient evidence to sustain a particular instruction such as a multiple conspiracy instruction, is generally a question of law subject to *de novo* review." *Id.* (citing *United States v. Maza*, 93 F.3d 1390, 1399 (8th Cir. 1996).

We conclude that evidence in the record does not support a theory of multiple conspiracies to warrant the requested instruction. Rather, the evidence shows a single overarching conspiracy to exchange sex with inmates for contraband. As detailed above in our review of the variance claim, the evidence presented at trial showed a common scheme by an overlapping group of participants. This common scheme was accomplished over a relatively short amount of time, in the same location and manner. Our review convinces us that the only reasonable conclusion to be drawn from the evidence presented is that there was a single conspiracy to exchange sex for contraband.

Officer Moore and Officer Dixon mistakenly rely on *United States v. Chandler*, 376 F.3d 1303 (11th Cir. 2004) and *Kotteakos v. United States*, 328 U.S. 750 (1946) in support of their argument that there were multiple conspiracies. Officer Moore and Officer Dixon's reliance is misplaced because both cases

17

involved "hub and spoke" conspiracies wherein one central individual was involved in separate conspiracies that radiated from him. However, unlike the classic "hub and spoke" conspiracy, the arrangements in both *Chandler* and *Kotteakos* involved spokes that were separate from each other and which had no knowledge of the other's existence. *Chandler*, 376 F.3d at 1316 (holding that Jacobson was the only conspirator in the hub, and when he moved from spoke to spoke, he moved alone and the spokes were not aware of such movement); *Kotteakos*, 328 U.S. at 768-69 (holding that the different defendants fraudulently obtained loans through the central key man, Brown, but there was no connection between the defendants). The conspiracy here differs from the conspiracies in *Chandler* and *Kotteakos* because the co-conspirators here had knowledge of one another's actions. The officers confided in each other and the indirect evidence supports an inference that they agreed not to report one another. Further, they helped each other gain access to inmates in order to engage in sex and/or deliver contraband. R313 at 221-23, R314 at 845. Thus, in light of the evidence produced at trial, the District Court did not err in declining to submit a multiple conspiracies instruction to the jury.

**D**

Officer Dixon challenges his bribery conviction on three grounds. First,

18

Officer Dixon argues that the jury instruction was too broad because it stated that Officer Dixon could be convicted if he received favors in return for "violating his duty as a federal corrections officer." R193 at 7. Second, he contends that the jury instruction incorrectly defined contraband, bypassing his defense that it was within his discretion to provide such contraband to the inmates. Third, he maintains that the District Court improperly instructed the jury that it is bribery for a guard to trade contraband for sex. Specifically, Officer Dixon contends that the instruction improperly implied that sex was a "thing of value."

## 1

Officer Dixon challenges his bribery convictions by claiming that there was a constructive amendment to the indictment. Officer Dixon argues that the indictment was impermissibly expanded when the jury was instructed that he could be convicted if he received favors "in return for violating his duty as a federal correctional officer." R193 at 7. Officer Dixon argues that the expansion of the very narrow charge in the indictment constituted a constructive amendment to the indictment. The Government argues that the bribery instruction tracked the language of Counts Nine, Ten, and Eleven, and thus, there was no constructive amendment. Gov't Br. at 49-50. The Government is correct.

"[A]n amendment occurs when the essential elements of an offense

19

contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990). A "constructive amendment of the indictment is *per se* reversible error." *Id.* at 633.

Here, the superseding indictment charged Officer Dixon in three counts with bribery, receiving something of value in return for "being induced to do or omit to do an act in violation of his official duty, that is, to provide contraband and enforce federal statutes and BOP regulations." The jury instructions provided that a defendant can only be convicted on a bribery count if all of the following facts are proved beyond a reasonable doubt:

> First: That Defendant was a federal correctional officer;
> Second: That Defendant demanded, sought, received, accepted, or agreed to receive or accept the thing of value described in the count at issue; and
> Third: That the Defendant did so knowingly and corruptly and in return for violating his duty as a federal correctional officer.

The instruction further explained that:

> An officer acts "corruptly," as that word is used in the instruction, only if there is a "quid pro quo," that is, only if the officer intends to receive something of value in exchange for his duty. *It is a violation of an officer's duty to provide contraband to an inmate.*

In *United States v. Narog,* 372 F.3d 1243 (11th Cir. 2004), this Court found

20

that the jury instruction constructively amended the indictment. *Id.* at 1249. This Court held that essential elements of an indictment are impermissibly broadened when an indictment includes language describing the statutory crime and additional language narrowing the charged crime to a subset of the statutory crime, but the jury instruction omits the narrowing language. *Id.* at 1248. In *Narog,* the defendants were charged with offenses involving the possession of pseudoephedrine with knowledge that it would be used to manufacture methamphetamine. *Id.* at 1246. At trial, the district court delivered an initial jury instruction that tracked verbatim the language in the indictment. *Id.* After receiving this instruction, the jury asked the judge whether the defendants could be convicted based on intent to manufacture any controlled substance or whether the evidence had to show intent to manufacture methamphetamine. Id. at 1247. The district court, departing from the indictment and initial jury instruction, told the jury that conviction could be based on any controlled substance. *Id.* On appeal, this Court held that the district court's response to the jury's question constructively amended the indictment. *Id.* at 1250.

Here, the jury instruction did not exactly match the form of the indictment; however, the substance of the indictment remained intact. The elements of the bribery offense required proof that Officer Dixon was "induced to do or omit to do

21

any act in violation of his official duty." 18 U.S.C. § 201(b)(2). The inclusion in the superceding indictment of the language referring to contraband, enforcing federal statutes and Bureau of Prisons ("BOP") regulations narrows the statutory crime. Unlike *Narog,* however, this narrowing language was not omitted from the jury instruction. Rather, the jury instruction still contained the limiting language, stating: "It is a violation of an officer's duty to provide contraband to an inmate." R197 at 7. Thus, the jury instructions did not unconstitutionally broaden the indictment.

Further, unlike *Narog,* there does not appear to be confusion among the jury as to the grounds for conviction. In *Narog,* the district court concluded that the jury was "clearly confused," as evidenced by the question asked about the instruction during deliberation. *Narog,* 372 F.3d at 1246. Here, the jury did not request further instruction. Officer Dixon sets forth no other evidence that the jury was confused by the instructions provided. He merely suggests that there was a "possibility that the jury could have convicted Officer Dixon for accepting something of value in exchange for violating some general policy or ethical obligation, rather than exchange for contraband." Dixon Br. at 29. Officer Dixon has failed to demonstrate that the challenged instruction amended the indictment.

**2**

Officer Dixon challenges the bribery conviction on the basis that the jury instruction, defining contraband as "anything whatsoever not approved by the warden," was improper. He argues that this instruction did not allow the jury to consider the BOP policy, that provides guards with discretion to approve possession of non-hazardous materials by inmates. Dixon Br. at 29. Officer Dixon argues that the instruction prevented the jury from considering the critical issue of intent. *Id.* The Government persuasively argues that the definition of contraband was proper. The testimony at trial established that the guards did not have the discretion to provide contraband to inmates.

We review a district court's rejection of proposed jury instructions for an abuse of discretion. *United States v. Maduno*, 40 F.3d 1212, 1215 (11th Cir. 1994). The district court's refusal to incorporate a requested jury instruction will be reversed only "if the proffered instruction was substantially correct, the requested instruction was not addressed in charges actually given, and failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *Id.* (citing *United States v. Mendoza-Cecelia*, 963 F.2d 1467 (11th Cir. 1992), *cert. denied*, 506 U.S. 964 (1992). "[T]he district court has broad discretion in formulating its charge as long as the charge accurately reflects

the law and the facts." *United States v. Winchester,* 916 F.2d 601, 604 (11th Cir. 1990) (citation omitted).

Officer Dixon argues that the indictment did not define contraband and instead referred to 28 C.F.R. § 500.1(h), which gives a broad definition of contraband. Dixon Br. at 30. Under 28 C.F.R. § 500.1(h), contraband is defined as, "material prohibited by law, or by regulation, or material which can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution." Officer Dixon further argues that the only list of contraband introduced at trial was a general BOP list that did not include the items allegedly provided to inmates by Officer Dixon. Officer Dixon concedes that a regulation was introduced into evidence that suggested that the warden had the power to determine what could be possessed by inmates. He nonetheless argues that this broad regulation should have been considered in conjunction with BOP Program Statement P5580.07, which provides that an inmate may possess only that property which is approved by staff to be received by an inmate. R313 at 136-37. Officer Dixon argues that the same program statement provided staff with guidelines on exercising their discretion to approve things possessed by the inmates. R313 at 138.

Based on Officer Henson's testimony and the language in the Code of

24

Federal Regulations, the District Court did not abuse its discretion in instructing the jury as to the definition of contraband. The District Court derived its definition of contraband from 28 C.F.R. § 6.1, which maintains:

> The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom *anything whatsoever without the knowledge and consent of the warden* or superintendent of such Federal penal or correctional institution is prohibited.

28 C.F.R. § 6.1 (emphasis added).

Further, Officer Barry Henson's testimony supports the District Court's definition of contraband. Officer Henson is another correctional officer at the Federal Correctional Institute at Tallahasse, Florida. His testimony established that: (1) only the warden could approve the items available to inmates; (2) there was no such thing as "permitted contraband"; (3) upon arrival in the prison, officers were only permitted to provide inmates for "necessities so [they] can maintain sanitation," such as bedding, standard work clothes, temporary toiletry items, and items purchased from the commissary; and (4) guards were not authorized to give anything to the inmates. Thus, based on both Officer Henson's testimony and 28 C.F.R. § 6.1, the District Court did not abuse its discretion in defining contraband as it did.

**3**

Officer Dixon argues that the District Court improperly instructed the jury that it is bribery for a guard to trade contraband for sex because the instruction impliedly defined sex as a "thing of value." Officer Dixon argues that the determination of whether sex, an intangible thing, is a thing of value involves a determination of Officer Dixon's subjective intent. *Id.* Officer Dixon further argues that this question is one of fact that is properly left for the jury. *Id.*

Rule 30(d) of the Federal Rules of Criminal Procedure reads in pertinent part: "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)." Fed. R. Crim. P. 30(d).

Officer Dixon's counsel did not object to the jury instruction that defined sex as a "thing of value." In fact, the jury instruction proffered by Officer Dixon's counsel is similar enough to the actual jury instruction given to constitute a forfeiture of this argument. In a jury instruction conference, Officer Dixon's counsel suggested that an appropriate jury instruction should read: "It would be

26

sufficient if the thing of value were either money or sexual favors in exchange for violating an official duty." Further, Officer Dixon's counsel did not object to sex being classified as a "thing of value."

Rule 30(d) requires the defendant to make his specific objection before the jury retires. The failure to do so subjects the defendant's argument to plain error review. Here, there is no indication that Officer Dixon made his objection clear to the District Court. Thus, we can apply plain error review. In *United States v. Olano*, 507 U.S. 725 (1993), the Supreme Court outlined four requirements for plain error: first, an error occured; second, the error was plain; third, it affected substantial rights; and finally, not correcting the error would seriously affect the fairness of the judicial proceeding. *Id.* at 732-35. This Court has interpreted the *Olano* test strictly in the context of erroneous jury instructions and verdict forms. Moreover, we accord a trial judge wide discretion in formulating the jury charge. *Winchester,* 916 F.2d at 604.

Here, Officer Dixon has failed to demonstrate that plain error occurred. Officer Dixon relies on a Second Circuit case, *United States v. Williams*, 705 F.2d 603 (2d Cir. 1983), for the proposition that when a "thing of value" is intangible, the jury should determine whether the donee believed that such thing was of value. *Id.* at 622-23 . *Williams* is not binding authority in this Circuit. Further, this

Court has held that the term "thing of value" unambiguously covers intangible considerations. *United States v. Nilsen*, 967 F.2d 539, 542 (11th Cir. 1992). This broad interpretation is based upon a recognition that monetary worth is not the sole measure of value. *Id*. at 542-43 (citing *United States v. Schwartz*, 785 F.2d 673, 679 (9th Cir.1986)). "The conduct and expectations of both the defendant and the subject of the extortionate threat also *can* establish whether an intangible objective is a 'thing of value.'" *Id.* at 543 (citing *United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir. 1974) (emphasis added). Because the donee's subjective intent is not necessary in determining whether the intangible consideration is a "thing of value," no plain error occurred. Thus, Officer Dixon's trial counsel forfeited his objection to this jury instruction on appeal.

**E**

Officer Moore contends that the evidence produced at trial was insufficient to show that he knowingly and corruptly tampered with witness inmate Shirley B. Inmate Shirley B. was incarcerated in the Federal Correctional Institute at Tallahasse, Florida. Though Shirley B. did not engage in sexual intercourse with Officer Moore, she witnessed Officer Moore having sexual intercourse with her cell mate, inmate Sabrina B. R314 at 690-92.

The standard of review for this issue is *de novo*, but this Court views all

28

facts and makes all reasonable inferences in favor of the party who won below,

here, the Government. *United States v. Miller*, 71 F.3d 813, 815-16 (11th Cir.

1996). The test for whether the evidence is sufficient is whether a reasonable fact

finder could conclude that the defendant was guilty beyond a reasonable doubt.

*Sepulveda*, 115 F.3d at 888. Any conflicting testimony is a credibility issue for

the jury to determine. *Ramirez-Chilel*, 289 F.3d at 749.

To prove a violation of 18 U.S.C. § 1512(b), the Government must prove

beyond a reasonable doubt that Officer Dixon:

> knowingly use[d] intimidation, threatene[d], corruptly
> persuade[d] another person, or attempt[ed] to do so, or
> engage[d] in misleading conduct toward another person, with
> intent to--
> . . .
> (3) hinder, delay, or prevent the communication to a law enforcement
> officer or judge of the United States of information relating to the
> commission or possible commission of a Federal offense.

 18 U.S.C. § 1512(b).

Officer Moore directs our attention to *Arthur Anderson LLP v. United*

*States*, 544 U.S. 696 (2005), for the proposition that "limiting criminality to

persuaders conscious of their wrongdoing sensibly allows § 1512(b) to reach only

those with the level of 'culpability . . . we usually require in order to impose

criminal liability.'" *Id.* at 706 (citation omitted). The question then is whether a

jury could reasonably believe that Officer Moore was conscious that what he was doing was wrong when he gave inmate Shirley B. cigars in return for her silence about his having sexual relations with inmate Sabrina B. The testimony given by inmate Shirley B. indicates that Officer Moore tried to persuade her not to talk to authorities about the sex for contraband scheme. Officer Moore admitted to inmate Shirley B. that he had sex with inmate Sabrina B. and told inmate Shirley B. to let him know if she needed anything. Inmate Shirley B. understood this as an offer to provide her with contraband. Additionally, inmate Shirley B. testified that Officer Moore gave her cigars and told her that it was for "not telling."

Officer Moore's allegation, without citation to the record, that inmate Shirley B. had a reputation for blackmail is a credibility issue and a question for the fact finder to decide. *Ramirez-Chilel*, 289 F.3d at 749. Further, inmate Shirley B.'s testimony that she believed the payments to be hush money does not demonstrate any indicia of fabrication. We hold, therefore, that the evidence was sufficient to uphold Officer Moore's conviction of witness tampering.

**AFFIRMED.**