[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10294
Non-Argument Calendar
_____

D.C. Docket No. 1:04-cr-20250-DLG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS BACHYNSKY,
a.k.a. Reporter Doe,
a.k.a. Nick,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 25, 2014)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Nicholas Bachynsky appeals the district court's denial of his motion for a new trial based on newly discovered evidence, filed pursuant to Federal Rule of Criminal Procedure 33. After review, we affirm.[1]

## I.  BACKGROUND FACTS

### A.    2008 Trial and Convictions

In May 2008, following an extensive jury trial, Bachynsky was convicted of one count of conspiracy to commit securities fraud, three counts of wire fraud, and one count of securities fraud. The jury acquitted Bachynsky of eight other counts of securities fraud and five counts of mail fraud.

The charges arose out of a scheme between Bachynsky and his codefendant, Richard Anders, to defraud investors in a business, Helvetia Pharmaceuticals ("Helvetia"), that was purportedly developing a new cancer treatment. Anders pled guilty to one count of securities fraud, but did not testify at Bachynsky's trial. During the four-week trial, the government presented over 25 witnesses, including one of Bachynsky's co-conspirators who had solicited investments, a medical expert, and a number of defrauded investors, including William Daley and Ralph Klein, both of whom were personally solicited by Bachynsky.

---

[1] We review the denial of a motion for a new trial for an abuse of discretion. United States v. Dortch, 696 F.3d 1104, 1110 (11th Cir. 2012), cert. denied, 133 S. Ct. 993 (2013).

According to the trial evidence, Bachynsky was a medical doctor who had spent much of his career experimenting with the drug 2-4 dinitropehanal ("DNP"). DNP is a highly toxic chemical commonly used in herbicides and pesticides. In the 1930s, DNP was used as a weight loss agent that caused side effects such as cataracts, blindness, skin reactions, hyperthermia, and even death. At that time, the Food and Drug Administration ("FDA") deemed DNP unsafe for medical use in humans. Since then, DNP has never undergone FDA testing or received FDA approval for use in a cancer treatment drug. Bachynsky's own research conducted in Mexico showed that DNP was not a successful treatment drug.

In 1989, Bachynsky was convicted on federal racketeering and tax fraud charges and subsequently lost his medical license in several states. Bachynsky's 1989 convictions related to his operation of a chain of weight loss and smoking cessation clinics. The clinics, which treated patients with DNP, submitted fraudulent insurance claims.

While in prison, Bachynsky met Richard Anders. Anders had prior securities and wire fraud convictions and had been permanently barred by the Securities and Exchange Commission from trading securities or raising investment capital.

In 2001, after their release from prison, Bachynsky and Anders formed Helvetia. Helvetia's ostensible purpose was to study and develop a new cancer

3

treatment called intracellular hyperthermia ("ICHT") using DNP and to treat cancer patients in clinics.  While forming Helvetia, Anders and Bachynsky met with an attorney, who advised them that, due to their prior convictions, they could not serve as corporate officers or directors, own more than five percent of the shares of outstanding stock, or raise capital for the company.

Anders and Bachynsky nonetheless became undisclosed principals, developed a business plan, and, along with others, solicited investors purportedly to raise capital for Helvetia.  The business plan and sales materials contained false and misleading information about Helvetia and ICHT therapy and did not disclose Bachynsky's and Anders's prior convictions, their status as principals of Helvetia, or Bachynsky's loss of his medical licenses.

Bachynsky was Helvetia's Medical Director, and Anders was the President of Investor Relations.  While Bachynsky went to Europe to open clinics and establish companies to support their operations, Anders ran the day-to-day sales operations in the United States.  Anders offered to let potential investors speak with Bachynsky, and Bachynsky sometimes returned to the United States to help Anders solicit investors.

During these solicitations, Bachynsky provided false information about, inter alia, the status of his medical license, Helvetia's ownership of the exclusive rights to ICHT therapy, and the results of medical studies, including his own in

4

Mexico, on the effectiveness of DNP and ICHT therapy. In all, Anders, Bachynsky, and others working for Helvetia solicited almost $6,000,000 in investments.

After the jury returned its verdict, the district court imposed a total 168-month sentence on Bachynsky's four convictions.

## B.    Direct Appeal

On February 18, 2011, on direct appeal, this Court affirmed Bachynsky's convictions. United States v. Bachynsky, 415 F. App'x 167 (11th Cir. 2011). Among other things, the Court concluded that there was sufficient evidence "that Bachynsky knowingly entered into an agreement with Anders to make false material representations and omissions in order to solicit money from would-be investors." Id. at 171.

Although the Court concluded that the record was "replete with investors being induced to invest in Helvetia as the result of Bachynsky's role in the conspiracy," it also stressed that Bachynsky's relations with one investor named Daley were "sufficient alone to prove his conviction . . . ." Id. The Court noted that, with respect to investor Daley, there was evidence that: (1) Bachynsky represented he was a doctor and medical director of Helvetia; (2) Bachynsky and Anders had falsely represented to Daley that the Mexico drug trials had been successful; (3) Bachynsky gave Daley a copy of Helvetia's business plan

5

containing misrepresentations about the success of DNP and ICHT therapy and Helvetia's control of the technology; (4) neither Bachynsky nor Anders disclosed their prior convictions; and (5) Bachynsky knew the information he was providing was false, but used it to procure $10,000 from Daley.  Id.

## C.    Rule 33 Motion for a New Trial

In November 2008, prior to his sentencing, Bachynsky filed a pro se Rule 33 motion for a new trial based on newly discovered evidence.  Bachynsky claimed to have discovered a prison inmate, Todd Smith, to whom his codefendant Anders had admitted he, Anders, was solely responsible for the Helvetia fraud and had duped Bachynsky.

During Bachynsky's sentencing hearing, Smith initially testified on Bachynsky's behalf.  When Smith later recanted his testimony, the district court held Bachynsky's pro se Rule 33 motion in abeyance while Bachynsky further developed the record, and the district court proceeded with and completed Bachynsky's sentencing.

While Bachynsky's direct appeal was pending, the district court appointed counsel to supplement and prosecute Bachynsky's Rule 33 motion.  In September 2009, Bachynsky filed a counseled supplemental motion for a new trial.  This time, Bachynsky's newly discovered evidence consisted of affidavits from five other inmates who averred that Anders had told them Bachynsky was innocent.

6

The district court held an evidentiary hearing, at which Anders testified that he did not tell any of the five affiants that Bachynsky was innocent.  Anders stated, inter alia, that he never had a formal agreement with Bachynsky to defraud the Helvetia investors; rather, the fraud scheme developed slowly over time.  Anders insisted, however, that Bachynsky knowingly and voluntarily engaged in the fraud scheme, and Anders detailed Bachynsky's involvement in developing the business plan and soliciting some investors.

After the hearing, the district court entered an order denying Bachynsky's Rule 33 motion.  The district court considered only the five inmate affidavits and concluded that this evidence was not material because it was inadmissible hearsay and, in any event, would not have changed the outcome of Bachynsky's trial.

## D.  2013 Appeal and Limited Remand

Bachynsky appealed.  This Court affirmed the district court's conclusion that the five inmate affidavits were inadmissible "and therefore could not produce a different result."  United States v. Bachynsky, 539 F. App'x 949, 951-52 (11th Cir. 2013).  The Court nonetheless vacated the district court's order because it did not address Anders's testimony at the Rule 33 hearing or explain why that testimony did not warrant a new trial.  Id. at 952.  The Court remanded "for the purpose of reconsidering whether Bachynsky is entitled to a new trial, but only with respect to Anders's evidentiary hearing testimony."  Id.

7

### E.    Denial of Motion for New Trial Based on Anders's Testimony

On remand, the district court again denied Bachynsky's Rule 33 motion for a new trial.  In its January 9, 2014 order, the district court found that "[g]iven the extent of the Government's case and Anders's evidentiary testimony," Bachynsky had not shown that if Anders's testimony were presented at a new trial, it would result in a different outcome.  The district court stressed that: (1) "the Government's case against the Defendant lasted over four weeks with testimony from over twenty-five witnesses," including "multiple witnesses [who] testified about actions the Defendant took when Anders was not present, including his dental technician, William Daley"; (2) Anders's evidentiary hearing testimony "tends to inculpate the Defendant"; and (3) this Court had already concluded that Bachynsky's relations with Daley alone were enough to support his conspiracy conviction.

Bachynsky timely appealed the district court's January 9, 2014 order.

## II.  DISCUSSION

### A.    Rule 33

Under Rule 33, a defendant may file a motion for a new trial based on newly discovered evidence within three years after the verdict, and the district court may grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a), (b)(1).  To succeed on such a motion, the defendant must show that: "(1) the

8

evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result." United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003) (quotation marks omitted).

The failure to establish any one of these elements is fatal to a motion for a new trial. United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995). "Motions for a new trial based on newly discovered evidence are highly disfavored" and "should be granted only with great caution." United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc) (quotation marks omitted). "Indeed, the defendant bears the burden of justifying a new trial." Id. (quotation marks omitted).

## B.    Bachynsky's Rule 33 Motion

The district court did not abuse its discretion in denying Bachynsky's Rule 33 motion for a new trial. We need not decide if Bachynsky satisfied the first four elements of the test because we readily conclude that Bachynsky has not satisfied the final element. The district court correctly found that Anders's evidentiary hearing testimony, if presented in a new trial, would be unlikely to produce a different outcome.

Contrary to Bachynsky's claim, Anders's testimony was not exculpatory, but inculpatory. Anders did not testify that there was no conspiratorial agreement between him and Bachynsky, as Bachynsky argues. Rather, Anders testified merely that he and Bachynsky did not sit down at the beginning and enter into a formal agreement to defraud Helvetia's investors because the fraud scheme developed slowly over time. Anders clarified, however, that Bachynsky was a knowing and voluntary participant in that fraud scheme. Anders's testimony is consistent with the abundance of circumstantial evidence presented at trial showing that a "meeting of the minds" existed between Anders and Bachynsky, which is all that is necessary to prove a conspiracy. See United States v. Moore, 525 F.3d 1033, 1040 (11th Cir. 2008) (explaining that the government "is not required to demonstrate the existence of a 'formal agreement'" and may demonstrate by circumstantial evidence "a meeting of the minds to commit an unlawful act"). Indeed, on direct appeal, this Court affirmed Bachynsky's conspiracy conviction based on the "ample" circumstantial evidence of a conspiratorial agreement. See Bachynsky, 415 F. App'x at 171. Thus, Anders's testimony, that over time an informal understanding developed between him and Bachynsky to defraud Helvetia's investors, would not produce a different trial result.

In addition, Anders testified to multiple examples of Bachynsky's knowing involvement in the Helvetia scheme, including that: (1) while Bachynsky was in

Europe, he was aware of money being raised for Helvetia and spoke to two or three investors directly; (2) Bachynsky helped developed Helvetia's business plan and wrote all the information about DNP and ICHT therapy in the business plan and in the sales materials Anders gave to potential investors; (3) Anders and Bachynsky, together, were in charge of Helvetia; (4) Bachynsky told Anders to lie about his prior securities fraud conviction to an investor named Suzanne Kemp; (5) Bachynsky never disclosed his criminal convictions or the fact that he had been stripped of his medical license; and (6) the scheme netted between $5 million and $6 million, of which Bachynsky received approximately $1.9 million.  In short, Anders's testimony, as a whole, would serve to further inculpate Bachynsky in the fraud conspiracy and would not produce a verdict other than guilty.

Bachynsky points out that Anders's testimony contradicts the testimony of one of the government's witnesses, Ralph Klein, an investor who was the victim in two of Bachynsky's wire fraud convictions.  Specifically, the two wire fraud counts involved an April 11, 2001 wire transfer of $100,000 from Klein's bank account to one of Helvetia's bank accounts and an October 22, 2001 wire transfer of $350,000 from Klein's bank account to another of Helvetia's bank accounts.

At trial, Klein testified at length about multiple conversations he had with Bachynsky.  Specifically, Klein stated that: (1) he invested over $2 million in Helvetia after speaking with Bachynsky on the telephone several times; (2) his

11

conversations with Bachynsky gave him confidence in Bachynsky's abilities and knowledge as to the cancer treatment; (3) the fact that Bachynsky was a medical doctor was very important to his decision to invest in Helvetia; and (4) he probably would not have invested had he known that the Mexico drug trials were unsuccessful, that Bachynsky had lost his medical licenses, and that Bachynsky was a convicted felon.

At the evidentiary hearing, Bachynsky's counsel asked Anders about several investors Bachynsky had helped solicit. Anders had difficulty remembering the investors' names, pointing out, "it's been a long time," in fact, almost nine years. Indeed, at the Rule 33 hearing, Anders had trouble remembering many details of the scheme and admitted that his recollection was not as good as it was at the time he pled guilty. When Anders stated that he could not remember investor's names, Bachynsky's counsel asked, "No Ralph Klein?" Anders responded, "[Bachynsky] never spoke to Ralph Klein, never." Anders, however, was not asked any further questions about Ralph Klein or why Anders believed Bachynsky had never talked to him.

With respect to the conspiracy count, Anders's testimony about Klein would have no effect. As this Court concluded on direct appeal, the evidence of Bachynsky's interactions with another investor named Daley, alone, was sufficient to convict Bachynsky. Further, Anders corroborated Daley's trial testimony that

12

Bachynsky solicited an investment from Daley at a meeting at Daley's office and then later at a restaurant.[2]

As to the two wire fraud convictions, while Anders's testimony conflicts with Klein's account, this conflict is not of such a nature that a new trial probably would produce a different result. While Anders's testimony creates a conflict in the evidence, it does not show a likelihood of an acquittal. In fact, even if Anders's testimony were credited, a jury still could find Bachysnky guilty of the two wire fraud counts. To prove Bachynsky committed wire fraud, the government had to prove that Bachynsky devised or intended to devise a scheme or artifice to defraud or obtain money or property, and that Bachynsky used, or caused to be used, wires in furtherance of the scheme or artifice. See 18 U.S.C. § 1343.

At the Rule 33 hearing, Anders agreed that Bachynsky helped develop the business plan and sales materials Anders used to solicit investors. In particular, Anders said Bachynsky wrote the portions of the documents detailing the medical information, which contained numerous material omissions and false representations. Further, Anders, whom Klein also spoke with, testified that he relied on Bachynsky for all of the medical information he told potential investors during sales pitches. In other words, even crediting Anders, Bachynsky was

---

[2]Although Anders could not remember Daley's name, he accurately described Daley as the investor who was a dental technician who made prosthetic teeth.

13

"instrumental in the dissemination" of the fraudulent information by Anders to Klein to induce Klein to make the two wire transfers, regardless of whether he spoke to Klein himself.  See United States v. Sawyer, 799 F.2d 1494, 1502 (11th Cir. 1986) (concluding that a company executive who set up the sales program that used salespeople to solicit investors was liable for his own fraudulent conduct, which included allowing a salesperson to continue lying to investors, drafting a deceptive letter to be sent to investors, and being "instrumental in the dissemination of [the company's] deceptive disclosure statement").

Further, Anders's testimony about Klein was impeachment evidence of Klein's testimony and therefore does not merit granting a new trial.  See Jernigan, 341 F.3d at 1287; see also United States v. Al-Arian, 514 F.3d 1184, 1189 (11th Cir. 2008) ("[W]e may affirm for any reason supported by the record, even if not relied upon by the district court." (quotation marks omitted)). [3]

For these reasons, Bachynsky did not establish all the elements necessary to succeed on a Rule 33 motion.  Accordingly, the district court did not abuse its discretion in denying Bachynsky's Rule 33 motion based on Anders's testimony.

**AFFIRMED.**

---

[3]On appeal, Bachynsky's arguments focus only on his conspiracy conviction and his two wire fraud convictions involving Ralph Klein.  Thus, to the extent Bachynsky moved for a new trial on his remaining wire fraud conviction and his securities fraud conviction, he has abandoned those claims.  See United States v. Wright, 607 F.3d 708, 713 (11th Cir. 2010) (explaining that issues and arguments not raised in the initial brief are abandoned).