[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 3, 2008
THOMAS K. KAHN
CLERK

————————————————

No. 06-12610

————————————————

D.C. Docket No. 04-20705-CV-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRYL RICHARDSON,
a.k.a. Picallo,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(July 3, 2008)**

Before ANDERSON and BARKETT, Circuit Judges, and TRAGER,[*] District Judge.

TRAGER, District Judge:

Appellant, Darryl Richardson, was convicted of one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Richardson appeals his conviction and his sentence on several grounds, all based largely on his contention that his various illegal agreements with several coconspirators constituted not one but multiple conspiracies. Richardson argues that the evidence presented at trial tended to prove the existence of multiple distinct conspiracies, which fatally varied from, and was thus insufficient to support a conviction for, the single overarching conspiracy charged in the indictment. In addition, Richardson argues that the district court committed prejudicial error by not instructing the jury regarding his multiple conspiracies theory and its effect on the relevant statute of limitations. Finally, Richardson appeals his sentence claiming that the district court considered certain of Richardson's illegal acts that would have been time-barred under Richardson's multiple conspiracies theory. For the reasons stated below, Richardson's conviction and sentence are affirmed.

---

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

## Background

The government charged Richardson with one count of conspiracy to distribute cocaine. The indictment reads in relevant part,

> From at least in or around 1990, the exact date being unknown to the Grand Jury, and continuing to in or about 2001, at Miami, Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, Darryl Richardson, aka 'Picallo,' did knowingly and intentionally combine, conspire, confederate and agree with persons known and unknown to the Grand Jury to distribute a controlled substance . . . [that] involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.

Richardson was the only person charged in the indictment. The government tried Richardson three times. The first two trials failed to produce a unanimous jury verdict, but the third yielded a conviction.

Most of the evidence the government presented against Richardson was in the form of witness testimony. The government called several individuals who testified that they trafficked drugs with Richardson. The extent to which this evidence established the single conspiracy charged in the indictment, as the government claims, or multiple distinct conspiracies, as Richardson claims, is the primary issue in this appeal.

The first witness the government called to testify was Gregory Barnes.

3

Barnes testified that he distributed cocaine in Atlanta from 1985 through 1993, when he was indicted on firearm charges for which he served nine years in prison. Barnes began to deal drugs with Richardson in 1989 when Barnes was living in Atlanta and Richardson in Miami. Soon thereafter, Richardson moved into Barnes's Atlanta apartment. Barnes described many ways in which he mentored Richardson, and helped establish him in the Miami-to-Atlanta drug trade. Barnes also referred to Richardson as his "partner." Barnes further testified that he would supply Richardson with cocaine on consignment, also known as "fronting" him the cocaine, which Richardson would sell, after which Richardson would pay Barnes for the drugs. Following Barnes's incarceration in 1993, Barnes and Richardson did not distribute drugs together again. Thus, Richardson's involvement with Barnes spanned only from 1989 to 1993.

Following Barnes's testimony, the government called several individuals who described dealing drugs with Richardson and others between 1992 and 2001, none of whom claimed to have also worked with Barnes. The focus of Richardson's appeal is that his association with Barnes cannot be considered part of the same drug conspiracy or conspiracies that Richardson engaged in from 1992 to 2001 with other individuals.

Even though none of the government's evidence reflects that any of Richardson's coconspirators worked with both Richardson and Barnes between 1989 and 1993, with regard to at least one, Narvis Benton, the evidence does establish a temporal overlap. Benton testified that he started dealing drugs with Richardson in 1992, which was within the period of Barnes and Richardson's collaboration. Benton, however, denied ever working with or knowing of Barnes. Moreover, another witness and fellow conspirator, Derrick Blake, testified that he began to sell cocaine in 1993 or 1994 and began to work with Richardson in around 1994. If Barnes and Blake testified accurately, their stints dealing drugs with Richardson could not have overlapped, but may have been separated by as little as a few months.

In addition to Barnes, Blake, and Benton, the government called a series of witnesses who testified about dealing drugs with Richardson and others between 1994 and 2001. This testimony generally revealed that Derrick Blake, Narvis Benton, Robby Horton, Marvin Griffin, Jesus Wilson, Lamont Harrison, Rocky Marshal, Christopher Mitchell, Derrick Gloster, Jerry Miller, and, not least, Roshawn Davis all conspired with Richardson and others to traffic cocaine between Miami, where cocaine is relatively cheap, and Atlanta, where cocaine is relatively expensive. Many but not all of these individuals testified. Roshawn

Davis did not testify, but the evidence reflects that in addition to working closely with Richardson, Davis dealt drugs with Blake, Wilson, Harrison, and Mitchell, all of whom also dealt drugs with Richardson. Moreover, trial testimony revealed that Benton, Horton, Griffin, and Richardson worked together on drug deals; Harrison, Davis, and Richardson worked together on drug deals; Davis, Mitchell, and Richardson worked together on drug deals; and in 1997, after being arrested along with Wilson and Davis, Richardson asked Blake to arrange bail for all three. This evidence establishes that many members of Richardson's network of drug dealers knew and worked with not only Richardson but other members as well.

The defense presented no evidence at trial. Following the government's case, Richardson moved for a judgment of acquittal based on his contention that the government's evidence demonstrated a series of unconnected conspiracies rather than the single conspiracy charged in the indictment, constituting a fatal variance. The district court denied the motion. The district court also declined to give two jury instructions that Richardson had requested, each relating to his multiple conspiracies theory. Richardson appeals from those denials, and also from the district court's reliance for sentencing purposes on what Richardson argues is time-barred evidence.

6

## Discussion

## (1)

## Variance

### a. Standard of Review

"We will not reverse a conviction because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material and [2] substantially prejudiced the defendant." United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007) (internal quotations and citations omitted). Our first step, therefore, is to determine whether there was a material variance, i.e., whether the evidence supports the jury's conclusion that a single conspiracy existed. As this Court has recently noted,

> Because the jury determines the question of fact as to whether the evidence establishes a single conspiracy, the arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt.

United States v. Moore, 525 F.3d 1033, 1042 (11th Cir. 2008). In other words, a jury's conclusion that a single conspiracy existed should not be disturbed as long as it is supported by the evidence. Id. A material variance will only result if there

7

is no evidentiary foundation for the jury's finding of a single conspiracy, and only then will it need to be determined whether the variance requires reversal, i.e., whether it substantially prejudiced Richardson.

**b.      One or Multiple Conspiracies?**

To determine whether a jury could reasonably have found that this evidence established a single conspiracy beyond a reasonable doubt, we must consider: "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." Id. (emphasis in original).  It is important to note that "[s]eparate transactions are not necessarily separate conspiracies, so long as the conspirators act in <u>concert</u> to further a common goal.  If a defendant's actions facilitated the endeavors of other co-conspirators, or <u>facilitated the venture as a whole</u>, a single conspiracy is established." Id.  "It is irrelevant that particular conspirators may not have known other conspirators or may not have participated in every stage of the conspiracy; all that the government must prove is an agreement or common purpose to violate the law and intentional joining in this goal by coconspirators." <u>Edouard</u>, 485 F.3d at 1347 (internal quotations and citations omitted).  Moreover, this Court has held that a jury may find that a single conspiracy existed when "a 'key man' directs and coordinates the activities and individual efforts of various combinations of people." <u>Id.</u>

8

First, the government presented sufficient evidence to support the conclusion that Richardson and his various confederates, including Barnes, operated toward a common goal. "Courts typically define the common goal element as broadly as possible." Moore, 525 F.3d at 1042. And as this Court has "repeatedly stated, 'common' for the purposes of this test means 'similar' or 'substantially the same' rather than 'shared' or 'coordinate.'" United States v. Calderon, 127 F.3d 1314, 1327 (11th Cir. 1997). This Court has also noted that "in a drug conspiracy, in which the object of the conspiracy is clearly illegal and there are various clandestine functions to perform, the conspirators can be charged with knowledge that others are performing these different functions." United States v. Chandler, 388 F.3d 796, 811 n.21 (11th Cir. 2004). Moreover, "[i]t is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements. This does not, however, mean that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." Calderon, 127 F.3d at 1329 (11th Cir. 1997). When viewed in the light most favorable to the government, the evidence in this case clearly shows a common goal of buying and selling cocaine for profit – in Atlanta, Miami, and elsewhere – among Richardson and his various coconspirators. See, e.g., United States v. Adams, 1 F.3d 1566, 1583-84 (11th Cir.

9

1993) (holding that the "common goal" inquiry was satisfied by the common crime of importing marijuana); United States v. Jones, 913 F.2d 1552, 1560-61 (11th Cir. 1990) (holding that the "common goal" inquiry was satisfied by the common crime of importing cocaine); United States v. Khoury, 901 F.2d 948, 956-57 (11th Cir. 1990) (holding that the "common goal" inquiry was satisfied by the common crime of importing methaqualone). To be sure, Richardson relied on several suppliers, transporters, and customers – many of whom may not have known about the others – but the goal of trafficking cocaine with Richardson was common among them.

Second, the jury reasonably could have found the existence of an underlying scheme. The government's evidence supported the conclusion that Richardson and his coconspirators would work together to buy cocaine for relatively low prices in Miami and sell it for relatively high prices in Atlanta, thereby turning a profit. Although the evidence did not establish that all of Richardson's coconspirators only worked together, it did not have to. Even if, on occasion, Richardson's confederates did drug deals with each other without Richardson's involvement, that would not undermine the existence of an underlying scheme. The evidence supported a reasonable conclusion that each coconspirator worked with Richardson according to Richardson's general scheme.

10

Third, the evidence demonstrates an overlap of participants and times. The government's witnesses testified to various drug deals involving various players, but Richardson almost always played a central role. Gregory Barnes introduced Richardson to the practice of trafficking drugs between Miami and Atlanta and the two worked together from 1989 to 1993, when Barnes was arrested and incarcerated.[1] Beginning in 1992, at the latest, and continuing thereafter, Richardson trafficked drugs between Miami and Atlanta, just like he did with Barnes, with other individuals – namely Derrick Blake, Narvis Benton, Jesus Wilson, Lamont Harrison, Rocky Marshal, Christopher Mitchell, Derrick Gloster, Jerry Miller, and Roshawn Davis. Specifically, as noted, Benton testified that he began to deal drugs with Richardson in 1992, which was within the period of Barnes and Richardson's active collaboration, i.e., before Barnes's arrest. Even though Roshawn Davis did not testify, the evidence reflects that in addition to working closely with Richardson, he dealt drugs with several of Richardson's coconspirators. Based on this evidence, when viewed in the light most favorable

---

[1] It bears noting that Barnes's imprisonment did not relieve him of responsibility for the subsequent acts of members who joined Richardson's conspiracy much later. "[N]either arrest nor incarceration automatically triggers withdrawal from a conspiracy." United States v. Gonzalez, 940 F.2d 1413, 1427 (11th Cir. 1991); see also United States v. Finestone, 816 F.2d 583, 589 (11th Cir. 1987).

to the government, the jury could have reasonably concluded that Richardson was "a 'key man' [who] direct[ed] and coordinate[d] the activities and individual efforts of various combinations of people." See Edouard, 485 F.3d at 1347. Whether there was overlap among all of Richardson's coconspirators is irrelevant. Id. ("It is irrelevant that particular conspirators may not have known other conspirators or [may not] have participated in every stage of the conspiracy; all that the government must prove . . . is an agreement or common purpose to violate the law and intentional joining in this goal by co[-]conspirators.") (quoting United States v. Alred, 144 F.3d 1405, 1415 (11th Cir. 1998)). That Richardson knowingly involved himself with each conspiratorial act proved at trial is enough for the jury to have concluded that a single conspiracy existed.

The evidence reflects that during the conspiracy, which the indictment alleges lasted from 1990 to 2001, several coconspirators joined and exited. This does not mean, however, that Richardson's various agreements to traffic drugs with each of them constituted more than one conspiracy. A conspiracy is presumed to continue until its objectives have been abandoned or accomplished. United States v. Coia, 719 F.2d 1120, 1124-25 (11th Cir. 1983). Thus, once the conspiracy was established, and as long as Richardson and his partners held the collective goal of trafficking drugs, a coconspirator's exit would not have

12

terminated the conspiracy, nor would a coconspirator's entrance have started a new one.  Moreover, considering the temporal overlap, nothing in the evidence could have led the jury to conclude that between 1990 and 2001 Richardson ever stopped dealing drugs for any material length of time.

Therefore, because the government presented evidence sufficient to establish a common goal, underlying scheme, and overlap of participants, there was no material variance, and we will not disturb the jury's verdict.

### c.    Prejudicial Variance

Nevertheless, even if the jury could not have concluded that Richardson's work with Barnes was part of the same conspiracy Richardson engaged in later with other coconspirators – in other words, even were there a material variance – on the facts of this case the variance would not have engendered substantial prejudice, and thus would not require reversal.  See United States v. Alred, 144 F.3d 1405, 1415 (11th Cir. 1998) (emphasizing that "variance from an indictment is not always prejudicial, nor is prejudice assumed.") (citations and quotations omitted).  To demonstrate that he was substantially prejudiced, Richardson would have to show one of two things:

> 1) that the proof at trial differed so greatly from the charges that [he] was unfairly surprised and was unable to prepare an adequate defense; or 2) that there are so

> many defendants and separate conspiracies before the jury that there is a substantial likelihood that the jury transferred proof of one conspiracy to a defendant involved in another.

Calderon, 127 F.3d at 1328 (emphasis added).

On the first element, Richardson does not even claim to have been unfairly surprised or unable to prepare an adequate defense. See, e.g., Edouard, 485 F.3d at 1348 (noting that there was no substantial prejudice where the appellant did not claim to have been unfairly surprised or unable to prepare an adequate defense). Instead, Richardson claims that if the government had charged multiple conspiracies, as opposed to one, certain of the evidence presented at trial – namely, the testimony of Barnes – would have been time-barred. Therefore, according to Richardson, prejudice resulted when the jury, and the court in sentencing, relied on Barnes's testimony. If we agreed with Richardson that his agreements with Barnes should be viewed as a separate conspiracy, which we do not, Richardson is correct that it would be time-barred. Nonetheless, even were that the case, the government still could have offered Barnes's testimony as background to show how Richardson developed into a major drug dealer in Atlanta, as well as to prove Richardson's knowledge of the drug trade. See Fed. R. Evid. 404(b). Indeed, under Rule 404(b),

14

> [e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

Edouard, 485 F.3d at 1344 (holding that the district court did not commit plain error by admitting evidence, in a drug conspiracy prosecution, of uncharged drug smuggling activity that occurred prior to the conspiracy charged in the indictment) (internal citations and quotations omitted). According to Barnes's testimony, he began working with Richardson in 1989 when Richardson was living in Miami, and soon thereafter helped establish Richardson in the Atlanta drug trade by introducing him to various people, locations, and methods. During their collaboration, Barnes and Richardson lived together in Atlanta, and sold drugs there that had been purchased in Miami. Thus, even if Richardson's involvement with Barnes could be considered a separate and uncharged conspiracy, Barnes's testimony could have been properly admitted to establish Richardson's introduction to the Miami-to-Atlanta drug trade. Thus, Richardson's claim that he was substantially prejudiced by Barnes's testimony is unavailing.

The second element, regarding whether "there are so many defendants and separate conspiracies before the jury that there is a substantial likelihood that the

15

jury transferred proof of one conspiracy to a defendant involved in another," Calderon, 127 F.3d at 1328, is irrelevant here because Richardson was the hub of the conspiracy and was tried alone. The point does, however, segue nicely into a discussion of United States v. Chandler, 388 F.3d 796 (11th Cir. 2004), upon which Richardson relies heavily.

In Chandler, several defendants were charged with participating in a single conspiracy to commit mail fraud. The fraud involved a trivia game conducted by McDonald's restaurant. "The games were played by visiting the restaurant, purchasing food, and collecting the game stamps that were attached to the various food products sold by McDonald's. Certain game stamps were 'winners,' worth substantial sums of money." Id. at 799. Jerome Jacobson – the hub of the charged conspiracy – worked for the marketing company that McDonald's employed to develop, manage, and advertise the game. Id. "The indictment alleged that Jacobson would embezzle these game stamps and conspire with friends, relatives, and others to act as 'recruiters,' who would in turn solicit other friends and relatives to submit the stolen winning game stamps to McDonald's and collect the prize money." Id. Jacobson was joined in the indictment, but he pleaded guilty prior to trial. The defendants at trial were among those who recruited winners or redeemed stolen game stamps, and were convicted for having participated in the

16

single charged conspiracy.  Id.  The panel reversed the conviction because it found a material and prejudicial variance between the indictment and the evidence.

The government did not prove, nor did it even allege, that the Chandler defendants had any knowledge of Jacobson or the underlying embezzlement.  Id. at 800.  Thus, Chandler compared the charged conspiracy to a rimless wheel, i.e., "one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction."  Chandler went on to note, "We have reversed convictions where such knowledge [among the individual spokes] was lacking, finding no agreement to the overall conspiracy, and holding that the individual spokes constituted separate conspiracies."  See id. (citing United States v. Ellis, 709 F.2d 688, 690 (11th Cir. 1983) (overruled on other grounds by United States v. Lane, 474 U.S. 438 (1986)); United States v. Nettles, 570 F.2d 547, 551 (5th Cir. 1978); United States v. Levine, 546 F.2d 658, 663 (5th Cir. 1977) (overruled on other grounds by Lane, 474 U.S. 438)).  Richardson would like us to analogize his case to Chandler, and to the other "rimless wheel" conspiracy cases cited by Chandler.  All of those cases, however, as well as Chandler itself, differ markedly from the present case because the only defendant in this case, Richardson, was not a spoke, but the hub of all the

17

conspiratorial acts the government sought to prove at trial. Thus, the concern that largely motivated the holding in <u>Chandler</u> – i.e., that in a "multi-defendant conspiracy prosecution . . . individuals who are not actually members of the group will be swept into the conspiratorial net," <u>Chandler</u>, 388 F.3d at 798 – is of no moment today. This is simply not a case where the government seeks to hold a defendant who played a peripheral role in a vast conspiracy liable for criminal acts of third parties about which the defendant had no knowledge. Richardson has not claimed, nor could he credibly, that he was innocently unaware of any of the illegal acts testified to at trial by his various associates. Richardson was the only defendant, he was the hub, and all of the government's evidence sought to establish his and nobody else's guilt.

### d.    Remedy for Variance

Furthermore, even if we agreed with Richardson that his association with Barnes, which lasted from 1989 to 1993, cannot be considered part of the same conspiracy that Richardson engaged in later with other individuals, and that he was somehow prejudiced by the variance, the appropriate remedy still would not be the acquittal sought by Richardson. The prosecution need not prove exactly what the indictment alleges. It is sufficient for the government to prove a subset of the allegations in the indictment, as long as the allegations that are proved

18

support a conviction for the charged offense. See United States v. Ward, 486 F.3d 1212, 1227 (11th Cir. 2007); see also United States v. Duff, 76 F.3d 122, 126 (7th Cir. 1996) (citing United States v. Miller, 471 U.S. 130 (1985)) ( "A prosecutor may elect to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged.") . The evidence unquestionably establishes that Richardson participated in at least one conspiracy within the time frame of the indictment. The remedy for someone in Richardson's position – assuming multiple conspiracies were established – was not an acquittal, but a ruling excluding evidence unrelated to the charged conspiracy. This remedy, however, would not have been proper in this instance. Each of the conspiracies could have been charged separately in one indictment and tried together, provided at least one act in furtherance of the conspiracy occurred within the limitations period. And the evidence outside of the statute of limitations – i.e., that relating to Barnes – would have most likely been admitted under Rule 404(b) in order to prove how Richardson became involved with and knowledgeable about the drug trade. Moreover, the record does not reflect that Richardson ever asked the district court to exclude Barnes's testimony or to instruct the jury not to consider it as direct evidence. He merely requested a generic statute of limitations instruction, which, as discussed below, was not supported by the evidence.

In sum, even if we found a material variance – and on this record we do not – Richardson has not demonstrated substantial prejudice, and therefore, any variance was not fatal in the sense that it entitled him to an acquittal.[2]

**(2)**

**Jury Instructions**

a.    **Standard of Review**

In claims closely related to his variance claim, Richardson argues that his conviction should be vacated because the district court committed prejudicial error by not delivering two proposed jury instructions – one dealing with Richardson's multiple conspiracies theory; the other, the relevant statute of limitations.

We review a district court's refusal to give a requested

---

[2] Indeed, even if Barnes and Richardson were tried jointly and charged with the same conspiracy, and assuming the evidence established the existence of two separate conspiracies rather than one, the variance would not entitle either defendant to an acquittal (assuming of course that Barnes's separate conspiracy was within the limitations period). On the contrary, the evidence would still be sufficient to support a conviction for each defendant whom the evidence established as a member of any drug conspiracy during the period charged in the indictment. The proper remedy for the variance would not be an acquittal, but a limiting instruction telling the jury that when deliberating on the guilt of a defendant it may only rely on evidence of conspiracies involving that particular defendant. If this remedy would be insufficient because of the prejudicial impact or spillover from the other conspiracy, the appropriate remedy would be severance and a new trial, but still not an acquittal.

jury instruction for an abuse of discretion. We will find reversible error only if (1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense.

United States v. Palma, 511 F.3d 1311, 1314-15 (11th Cir. 2008) (citations and quotations omitted). A defendant is generally entitled to a jury instruction relating to his theory of the defense if, when viewed in the light most favorable to the accused, the evidence supports the theory. Id. As a matter of law, we review de novo whether the evidence sufficiently supports a proposed theory-of-the-defense instruction. Edouard, 485 F.3d at 1348-49.

b.      **Multiple Conspiracies Jury Instruction**

The first of Richardson's proposed jury instructions at issue relates to his multiple conspiracies theory and is identical to an Eleventh Circuit Pattern Jury Instruction, which provides:

> You are further instructed, with regard to the alleged conspiracy offense, that proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges.

> What you must do is determine whether the single conspiracy charged in the indictment existed between

21

two or more conspirators. If you find that no such conspiracy existed, <u>then you must acquit the Defendant[] of that charge</u>. However, if you decide that such a conspiracy did exist, you must then determine who the members were; and, if you should find that a particular Defendant was a member of some other conspiracy, not the one charged in the indictment, then you must acquit th[e] Defendant.

In other words, to find a Defendant guilty you must unanimously find that such Defendant was a member of the conspiracy charged in the indictment and not a member of some other separate conspiracy.

Eleventh Circuit Pattern Jury Instructions (Criminal) 13.3 (emphasis added). The general thrust of Richardson's appeal is that we should vacate his conviction because the evidence demonstrated his participation in multiple distinct conspiracies, as opposed to the single conspiracy charged. Thus, he argues that this proposed instruction was necessary to explain to the jury that if it found that the single conspiracy charged in the indictment did not exist, the jury should render a verdict of acquittal. We disagree. Where the evidence establishes multiple conspiracies there is a variance, and the issue then is whether a defendant has been prejudiced. As discussed above, however, we doubt that the requested charge, whose language seems to require an acquittal upon a finding of multiple conspiracies, is ever appropriate where there is sufficient evidence to establish a defendant's membership in at least one conspiracy within the scope of the

22

indictment.  This is particularly the case when the defendant, like Richardson, is at the center of each of the multiple conspiracies he claims existed, all of which occurred during the time frame of the indictment.[3]

At the outset, it bears emphasis that Richardson was tried alone.  This is not a case where several defendants were tried together for their varying degrees of participation in a single conspiracy.  This Court has very recently reiterated that

> [g]enerally, a multiple conspiracies instruction is required <u>where the indictment charges several defendants with one overall conspiracy</u>, but the proof at trial indicates that a jury could <u>reasonably conclude</u> that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment.

<u>Moore</u>, 525 F.3d at 1044(citing <u>Calderon</u>, 127 F.3d at 1328) (first emphasis added).  Thus, it seems clear that the instruction is intended for use in cases charging <u>multiple</u> defendants with a single conspiracy, which makes sense.  In those cases there is a legitimate concern that a defendant who operated on the

---

[3] Even in <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946) – which is the source of much of the law surrounding variance in conspiracy prosecutions – the Supreme Court, after finding a material and prejudicial variance between the indictment, which charged several defendants for a single conspiracy, and the evidence, which established multiple conspiracies, did not direct an acquittal.  <u>Id.</u> at 776.  Rather, the Court reversed and remanded for further proceedings to determine the guilt of each defendant for only those particular conspiracies of which he was a member, presumably in separate trials without the risk of prejudice from spillover evidence of unrelated conspiracies.  <u>Id.</u>

periphery of a large, overarching conspiracy will be unfairly grouped in with a larger conspiracy than he intended to join. The same cannot be said of cases, like this one, where the indictment charges only one defendant who is at the hub of the conspiracy. Indeed, when denying Richardson's requested charge, the district court relied, at least in part, on this distinction. See Appellant's Br. at 41-42 (quoting the record). Although this Court has not expressly ruled on the question, at least one circuit court considers a multiple conspiracies instruction inappropriate in the trial of a single defendant, see United States v. Corey, 566 F.2d 429, 431 n.3 (2d Cir. 1977) (citing United States v. Sir Kue Chin, 534 F.2d 1032 (2d Cir. 1976)), and we are aware of no case in this circuit finding that a district court fatally erred by not delivering the multiple conspiracies instruction in a single-defendant case. For the reasons set forth below, we agree with the Second Circuit, and find that the district court correctly concluded that the multiple conspiracies instruction was neither necessary nor appropriate.

The multiple conspiracies instruction can be thought of as embodying three possible defense theories. First, that the jury must acquit unless it finds beyond a reasonable doubt that the conspiracy charged in the indictment existed. Second, that even if the charged conspiracy existed, the jury must acquit unless it finds beyond a reasonable doubt that Richardson was a member of it. And third, that the

jury must acquit unless it finds beyond a reasonable doubt that all of Richardson's illegal agreements constituted one conspiracy, i.e., that his conspiracy with Barnes was not separate or distinct. None of these defense theories justify the multiple conspiracies instruction in this case.

First, to the extent Richardson's defense was that the single conspiracy did not exist, his proposed instruction would have been redundant and thus unnecessary. The instructions that the court delivered to the jury, absent the proposed multiple conspiracies instruction, adequately explained that Richardson should be acquitted if the evidence failed to establish the existence of the charged conspiracy. Specifically, the court's instructions included the following:

> What the evidence in the case must show beyond a reasonable doubt is: First: That two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; Second: That [the] Defendant, knowing the unlawful purpose of the plan, willfully joined in it; and Third: That the purpose of the unlawful plan was to distribute cocaine.

> . . .

> You will note that the Indictment charges that the offense was committed 'on or about' a certain date. The Government does not have to prove with certainty the exact date of the alleged offense. It is sufficient if the Government proves beyond a reasonable doubt that the offense was committed on a date reasonably near the

date alleged.

. . .

The Defendant is on trial only for the specific offense alleged in the indictment.

These instructions clearly explained that unless the government proved the conspiracy charged in the indictment beyond a reasonable doubt, the jury must acquit Richardson. Our holding in United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997), is instructive on this point. In that case, multiple defendants were charged with a single drug conspiracy, making it a much more appropriate case for the multiple conspiracies instruction than this one. Nevertheless, the panel held that the district court did not err by not giving it, partly because the instructions the court did give, which mirrored in all material respects the Richardson instructions excerpted above, "adequately informed the jury that in order to convict, it must find that each appellant joined in the conspiracy charged." Id. at 1329-30. In this case, as in Calderon, the instructions as given adequately told the jury what it needed to know.

Second, to the extent Richardson's defense was that even if the single conspiracy did exist, he was not a member of it, his theory finds no support in the evidence. Richardson was the only defendant tried. Thus, all of the government's

26

evidence had to be relevant to his guilt. Once the jury concluded that the charged conspiracy did exist, there is no evidence whatsoever that could have led the jury to conclude that Richardson was not a member of it for its entire duration.

Third, to the extent Richardson's defense was that the jury should acquit him because his agreement with Barnes constituted a separate conspiracy, the instruction would have been incorrect. As we stated above in our discussion of the variance claim, even had the evidence demonstrated the existence of two distinct conspiracies – one with Barnes and one with everyone else – Richardson would have been entitled to, at most, exclusion of the evidence relating to Barnes, but certainly not an acquittal, as the evidence more than amply established Richardson's participation in a drug conspiracy during the time frame of the indictment.

### c.    Statute of Limitations Jury Instruction

Although Richardson did not ask the court to exclude evidence of conspiracies unrelated to the charged conspiracy – which would have been the appropriate remedy had multiple conspiracies been established – he did propose the following instruction regarding the relevant statute of limitations:

> As a defense, the Defendant asserts that there is a
> conflict in the testimony as to the date of the termination
> or end of the conspiracy. The law requires that the

27

Government prove that the conspiracy charged continued to function less than five years before the return of the Indictment. The Indictment was returned on September 23, [2004]. Thus, you must determine whether the conspiracy continued after September 23, 1999. If you find that the conspiracy continued after September 23, 1999, then the defense fails, and you should disregard it. However, if you find that the evidence shows that the conspiracy ceased prior to September 23, 1999, then you must find the Defendant not guilty.

Richardson argues that the district court erred by not delivering this instruction because had the jury determined that the government's evidence established not one but multiple distinct conspiracies, certain of those distinct conspiracies may have been time-barred. Thus, argues Richardson, the instruction was necessary to explain to the jury that it should not rely on evidence of time-barred conspiracies. Richardson has not argued that all of his agreements comprising the charged conspiracy occurred outside of the limitations period, only that some of them did.

We find Richardson's argument unavailing. The indictment charged a single conspiracy that spanned from 1990 to 2001. The jury convicted Richardson of this conspiracy, and we have already rejected Richardson's claim that a material and prejudicial variance existed between the crime charged and the crime proved. There is no evidence whatsoever, even when viewed in the light most favorable to Richardson, that could have led a reasonable jury to conclude that the conspiracy,

as charged, ended prior to September 23, 1999.  But again, even if there had been distinct time-barred conspiracies, the appropriate remedy for someone in the hub position was not an acquittal.  Because more than ample evidence established that at least one conspiracy existed within the statute of limitations, the appropriate remedy for Richardson to have sought was either the exclusion of evidence relating to Barnes (and other unrelated conspiracies) or an instruction to the jury not to consider Barnes's testimony as direct evidence of the charged conspiracy. The record does not reflect that Richardson ever asked for this particular remedy, and neither of the jury instructions he did propose would have achieved the proper result.  Thus, the district court did not commit prejudicial error by not delivering Richardson's proposed instructions.

**(3)**

**Sentencing**

Richardson's last argument concerns his sentence.  He argues that the district court erroneously relied on evidence of what he believes is the time-barred conspiracy with Barnes to determine his sentence.  Thus, his argument can only succeed if we accept his prior argument that he was a member of multiple distinct conspiracies, some of which were time-barred, rather than one overarching

conspiracy as charged in the indictment, which could not have been time-barred. Because we have already affirmed his conviction for the single conspiracy charged, his sentence must also be affirmed.

## Conclusion

We conclude that there was no material and prejudicial variance between the single conspiracy charged in the indictment and the evidence presented at trial. Even had there been a material variance in that the evidence established multiple conspiracies, acquittal would not have been appropriate as the evidence established Richardson's involvement in at least one conspiracy within the scope of the indictment. Nor would the variance require reversal and a new trial because the evidence from the other conspiracies would have been admissible under Rule 404(b). Thus, Richardson would not have been prejudiced. We further conclude that the district court did not err, let alone prejudicially so, by declining to deliver two requested jury instructions. The requested multiple conspiracies instruction would have been inappropriate both because this case involved a single defendant – who, moreover, was at the hub of the drug conspiracy or conspiracies – and because an acquittal, which the charge requested, was not appropriate or justified. Moreover, because the conspiracy as charged in the indictment continued into the

30

limitations period, the statute of limitations instruction was also not appropriate. The evidence of what Richardson claims was a separate and time-barred conspiracy would have been admissible under Rule 404(b), and in any event, the requested charge sought improper relief – an acquittal. Last, because Richardson was convicted of a single conspiracy which was not time-barred, and his variance claim has been rejected, we conclude that the district court did not rely on improper evidence in sentencing. Accordingly, Richardson's conviction and sentence are

**AFFIRMED.**