[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2011
JOHN LEY
CLERK

No. 10-10070
Non-Argument Calendar

_____

D.C. Docket No. 0:97-cr-06007-FAM-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRITZ LAFONTANTE,
a.k.a. Guy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 9, 2011)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Fritz LaFontante appeals his convictions and sentence for conspiracy to import cocaine; conspiracy to possess with intent to distribute cocaine; and conspiracy to launder money. He was charged, along with a number of co-defendants, as a member of a large-scale drug organization that established a cocaine transportation and distribution network from Colombia to the United States from June 1987 to November 1996. LaFontante absconded after the jury was seated, and the jury convicted LaFontante *in absentia*. In 2009, LaFontante was apprehended and sentenced to a total of 240 months' imprisonment. LaFontante raises three issues on appeal, and we affirm for the following reasons.

## I.

First, LaFontante argues that we should vacate his convictions because the government's evidence established multiple, independent conspiracies, a material and prejudicial variance from the single unified conspiracy charged in each count of the indictment. According to LaFontante, the evidence showed that he had split from co-defendant Jacques Ketant and had opened his own smuggling route in Curacao that was a "wholly separate conspiracy, not related to Ketant and the conspiracy charged in the indictment." LaFontante asserts that there were at least three separate distribution routes: his own, which shipped cocaine through Curacao; co-defendant Ketant's, which shipped cocaine through Haiti; and co-

defendant Luckner Guillaume's, which shipped cocaine through Canada into New York and Chicago. To the extent he and other smugglers used the same corrupt officials, LaFontante asserts this was akin to a "rimless wheel," which was insufficient to demonstrate a single conspiracy. He notes that he did not attend the initial meeting with members of the Medellin Cartel and used different couriers than his co-defendants. LaFontante argues that for a chain conspiracy, the government would need to establish interdependence, which it could not do simply by showing that the distributors used the same routes. He alleges this variance was prejudicial because it allowed the government to introduce irrelevant, but highly inflammatory, evidence.

"'We will not reverse a conviction because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material and [2] substantially prejudiced the defendant.'" *United States v. Richardson*, 532 F.3d 1279, 1284 (11th Cir. 2008) (quoting *United States v. Edouard*, 485 F.3d 1324, 1347 (11th Cir. 2007)). "'Because the jury determines the question of fact as to whether the evidence establishes a single conspiracy, the arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have found that a

3

single conspiracy existed beyond a reasonable doubt.'" *Id.* (quoting *United States v. Moore*, 525 F.3d 1033, 1042 (11th Cir. 2008)). We will not disturb a jury's conclusion that a single conspiracy existed as long as it is supported by the evidence. *Id.* "A material variance will only result if there is no evidentiary foundation for the jury's finding of a single conspiracy, and only then will it need to be determined whether the variance requires reversal, i.e., whether it substantially prejudiced [LaFontante]." *Id*.

To determine whether the evidence supports a finding of a single conspiracy, we evaluate: "'(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants.'" *Id.* (quoting *Moore*, 525 F.3d at 1042). "The government must establish interdependence amongst the co-conspirators." *United States v. Seher*, 562 F.3d 1344, 1366 (11th Cir. 2009). We have explained that:

> The existence of separate transactions does not have to imply separate conspiracies if the co-conspirators acted in *concert* to further a common goal. Courts typically define the common goal element as broadly as possible, with "common" being defined as "similar" or "substantially the same." If a defendant's actions facilitated the endeavors of other coconspirators, or *facilitated the venture as a whole*, then a single conspiracy is shown. Each co-conspirator thus does not have to be involved in every part of the conspiracy.

*Id.* (citations omitted) (internal quotation marks omitted).

Applying this standard, the jury could reasonably conclude, beyond a reasonable doubt, that the evidence established a large criminal organization whose interconnected members imported cocaine from Haiti into the United States using corrupt airport officials in each country. The cocaine was then sold in the United States, and the profits were flown back to Haiti. LaFontante's counsel argued extensively at trial that the government had proved multiple conspiracies, rather than the unified conspiracies charged in the indictment, and the district court gave a multiple conspiracy jury instruction. But the evidence supports the jury's decision that LaFontante participated in a larger conspiracy with respect to importing cocaine, possessing it with the intent to distribute, and laundering the drug proceeds.

It is true, as LaFontante argues, that there was evidence tending to establish multiple conspiracies. For example: Evens Gourgue stated that his dealings with LaFontante and Ketant were different; LaFontante made an independent decision to import drugs through Curacao; and Ketant had an independent partnership with Guillaume and another individual to import drugs into New York. But there was also evidence tending to establish the existence of the single conspiracies charged in the indictment. The various participants continued to have the same common

5

goal: the importation of cocaine into the United States. Although the locations differed, the method remained constant: safe passage of cocaine through departing and arriving airports using couriers and corrupt officials. The fact that other co-defendants participated in smuggling attempts without LaFontante's participation does not justify overturning the jury's verdict and finding that there were multiple conspiracies with respect to each charged count.

LaFontante was identified as Ketant's "partner," at least up until 1993. Even though LaFontante may have stopped working directly with Ketant, there is no evidence that he ever formally withdrew from the conspiracy itself, or ever terminated his relationship with other co-conspirators. *See United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) ("A mere cessation of activity in the conspiracy is not sufficient to establish withdrawal."). Even after the partnership ended, LaFontante and Ketant continued to use common couriers, including Junie Jean and her husband. The jury heard evidence indicating that Ketant interacted with co-defendants Joseph Francois and Marc Valme regarding drug distribution, and a witness testified that he saw LaFontante with Francois twice. To deliver cocaine to Jean, LaFontante used Claudie Adam, Ketant's mother-in-law. LaFontante and Ketant also continued to rely on Valme in Haiti and Gourgue in America. While LaFontante did not participate in every transaction, these

6

significant overlapping relationships between the parties were sufficient to infer LaFontante's awareness of the organization's common goals.

Additionally, for the reasons discussed in Part II, the evidence likewise showed that LaFontante and his co-defendants engaged in similar transactions indicative of money laundering. The co-defendants all gave or accepted bribes to ensure the safe passage of cocaine through international borders. LaFontante transported $80,000 in cash from the United States to Curacao, paid Jean and Gourgue for their smuggling services, and paid travel and hotel expenses for couriers in order to promote and successfully carry on the organization's cocaine trafficking activities. From this evidence, the jury could infer a single conspiracy to launder the drug trafficking proceeds.

Accordingly, no material variance existed between the evidence presented at trial and the single conspiracy charged in each count. LaFontante now admits on appeal that he participated in drug transactions, and although he argues that he did so independently, the jury was entitled to find otherwise. Because we hold that a material variance did not exist in this case as to any of the charged conspiracies, there is no need to address the prejudice prong. *See Richardson*, 532 F.3d at 1284.

II.

LaFontante next argues that the evidence was insufficient to sustain his

7

conviction for conspiracy to commit money laundering.  LaFontante claims that the evidence did not support this conviction because the only evidence linking him to the money laundering was that he took $80,000 in cash to Curacao.  He argues that there was no explanation as to what he did with the money, and there is no indication that he entered into a criminal agreement with his co-defendants as to what to do with those funds.  He also asserts that, even if there were sufficient evidence to prove that he committed money laundering, there was no evidence that he entered into an unlawful agreement with anyone else to do so.

We review challenges to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government.  *United States v. Knight*, 562 F.3d 1314, 1322 (11th Cir.), *cert. denied*, 130 S. Ct. 192 (2009).  We will uphold the conviction unless the jury could not have found LaFontante guilty under any reasonable construction of the evidence.  *See United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999).  Stipulated facts are sufficient to prove elements of the charged offenses.  *Knight*, 562 F.3d at 1328.  We will reverse only if "'no trier of fact could have found guilt beyond a reasonable doubt.'"  *United States v. Yost*, 479 F.3d 815, 818–19 (11th Cir. 2007) (per curiam) (quoting *United States v. Lyons*, 53 F.3d 1198, 1202 (11th Cir. 1995)).

We are bound by the jury's credibility determinations unless the testimony

8

is "'incredible as a matter of law.'" *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (quoting *United States v. Hewitt*, 663 F.2d 1381, 1385–86 (11th Cir. 1981)), *modified on other grounds by United States v. Toler*, 144 F.3d 1423, 1427 (11th Cir. 1998). Testimony is incredible only if it relates to "'facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" *Id.* (alteration in original) (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)).

To convict LaFontante of conspiracy, the government had to prove (1) that a conspiracy existed; (2) that LaFontante knew about the conspiracy; and (3) that LaFontante knowingly and voluntarily joined the conspiracy. *See United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006). The defendant's knowing participation may be proven by direct or circumstantial evidence. *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005). Such circumstantial evidence includes "'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'" *Id.* (quoting *United States v. Garcia*, 405 F.3d 1260, 1270 (11th Cir. 2005) (per curiam)). For example, acts done in furtherance of the purpose of the conspiracy may be evidence of the underlying agreement. *United States v. Moore*, 525 F.3d 1033, 1040 (11th Cir. 2008).

"Section 1956(h) subjects anyone who conspires to commit a crime under §

1956 to the same penalties as the offense conduct." *United States v. Frazier*, 605 F.3d 1271, 1281 (11th Cir. 2010). To prove money laundering pursuant to 18 U.S.C. § 1956(a)(1)(A)(i), the government must show that: "(1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew the property involved in the transaction represented the proceeds of unlawful activity; (3) the property involved was in fact the proceeds of the specified unlawful activity; and (4) the defendant conducted the financial transaction 'with the intent to promote the carrying on of [the] specified unlawful activity.'" *United States v. Williamson*, 339 F.3d 1295, 1301 (11th Cir. 2003) (per curiam) (alteration in original) (quoting § 1956(a)(1)(A)(i)). A defendant may also commit money laundering by transporting or transferring money to and from the United States with the intent promote a specified unlawful activity. *See* § 1956(a)(2)(A). And "[t]he government need not prove that the funds came from a specific illegal action." *Frazier*, 605 F.3d at 1282. Proof that the funds were drug proceeds, or a defendant's knowledge of such, may be established by circumstantial evidence. *Id.*

Looking at the evidence in the light most favorable to the government, there was sufficient evidence for a jury to conclude beyond a reasonable doubt that LaFontante knowingly and willfully agreed to launder drug proceeds. This comes

primarily in the form of circumstantial evidence of an agreement. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1369 (11th Cir. 1994) ("Direct evidence of an illegal agreement is not necessary; circumstantial evidence may suffice."). LaFontante bribed officials in order to allow cocaine to pass through security checkpoints at airports, and he was caught taking $80,000 into Curacao. The evidence showed that LaFontante paid for the expenses and the salaries of drug couriers. He paid for the couriers' lodging around the same time that the couriers were caught transporting cocaine, so the jury could infer that the lodging was meant to promote the drug trafficking scheme. *See* § 1956(a)(1)(A)(i); *Frazier*, 605 F.3d at 1282. He also gave a jet ski and an all-terrain vehicle to Gourgue in exchange for Gourgue's assistance in importing cocaine, and he offered to have a friend launder Gourgue's drug proceeds to conceal the income source. Notably, co-defendant Ketant engaged in similar conduct by exchanging vehicles for drug-related services with couriers. Moreover, LaFontante's expenditures could not be explained adequately by his reported legitimate income.

Viewing this evidence in the light most favorable to the government, the jury could reasonably infer that LaFontante both engaged in money laundering and entered into an agreement to do so. Accordingly, we hold that there was sufficient evidence to support LaFontante's conviction for conspiracy to commit

11

money laundering.

## III.

Finally, LaFontante challenges the district court's imposition of a four-level aggravating role enhancement, asserting that he did not qualify as a leader or organizer. A defendant's role as an organizer or leader is a factual finding that we review for clear error. *See United States v. Jiminez*, 224 F.3d 1243, 1250–51 (11th Cir. 2000). We will not find clear error unless "'we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quoting *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003)). When a defendant objects to a fact in the PSI, the government must prove that fact by a preponderance of the evidence, by presenting "reliable and specific evidence." *See United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).

To assess whether a defendant was an "organizer or leader of a criminal activity," we consider several factors, including:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

12

*United States v. Gupta*, 463 F.3d 1182, 1197–98 (11th Cir. 2006) (citing U.S.S.G. § 3B1.1 cmt. n.4). Not all of these considerations need to be present. *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005) (per curiam). "'Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership.'" *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (per curiam) (quoting *United States v. Brown*, 944 F.2d 1377, 1385 (7th Cir. 1991)).

"There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1 cmt. n.4. A role enhancement requires that "the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity." *Martinez*, 584 F.3d at 1026. A defendant's management of the assets of the conspiracy, on its own, is insufficient to support a § 3B1.1 enhancement. *Id.*

After careful review, we affirm. Although LaFontante may not have been the kingpin of the overall conspiracy, he organized and led the opening and operation of the Haiti-Curacao-United States route. Moreover, LaFontante employed and directed the affairs of multiple couriers. In addition to recruiting and overseeing these couriers, he made their travel plans, paid them, and paid for their travel and hotel expenses. LaFontante also recruited corrupt public officials

13

into his personal service.  LaFontante's actions consisted of more than merely managing the assets of the conspiracy.  LaFontante coordinated and controlled the movements of drug couriers across international borders, which involved a significant amount of planning and coordination.  A four-level role enhancement was appropriate.

**AFFIRMED.**