[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16172
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00068-MCR-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENJAMIN DEAN GARRETT,
a.k.a. Ben Garrett,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 7, 2013)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Benjamin Garrett appeals his convictions for conspiring to transport stolen

equipment and jewelry in interstate commerce, 18 U.S.C. § 371, and transporting

stolen jewelry in interstate commerce, id. § 2314.  The district court denied Garrett's motion for a judgment of acquittal in which he argued that there was insufficient evidence to prove he joined a single conspiracy to transport stolen goods and that the district court abused its discretion by admitting testimony that he offered to sell three stolen skid loaders, as evidence of prior bad acts.  The district court also denied Garrett's motion for a new trial in which he argued that the jury should not have been instructed that he could be held responsible for the transportation of stolen jewelry by his coconspirators.  Garrett challenges the denial of both of those motions.  We affirm.

Sufficient evidence supports Garrett's conviction for conspiring to transport stolen goods in interstate commerce.  Viewed in the light most favorable to the prosecution, both the recordings of telephone conversations between Garrett and a coconspirator, Kreg King, and King's testimony established that Garrett joined an ongoing conspiracy to steal property and transport it to other states for resale.  See id. § 371; see United States v. Edouard, 485 F.3d 1324, 1349 (11th Cir. 2007).  The evidence established that, after King told Garrett about the conspiracy, Garrett purchased a golf cart for resale that he knew King's cohorts had stolen in Alabama.  When Garrett was unable to obtain more stolen golf carts to sell in his pawn shop in Florida, Garrett recruited King and his cohorts to travel to Florida to steal from one of Garrett's regular customers jewelry that Garrett planned to sell in New York

2

or Miami.  Garrett coordinated with his coconspirators to burgle the customer's home and steal the jewelry while she was at his pawn shop examining a diamond bracelet, and Garrett later attempted to sell a few pieces of the stolen jewelry in his pawn shop.  But after Garrett encountered problems selling the jewelry, King and his cohorts transported most of the jewelry to North Carolina.  Based on this evidence, the jury was entitled to find that Garrett joined an existing conspiracy to transport stolen goods and that the burglary and theft of jewelry were committed in furtherance of that conspiracy.  See United States v. Richardson, 532 F.3d 1279, 1284–86 (11th Cir. 2008); Edouard, 485 F.3d at 1347–48.  The record supports a finding that Garrett and his coconspirators depended on each other to discover, pilfer, and transport goods and acted in concert to profit from their illegal enterprise.  See Edouard, 485 F.3d at 1347.

Garrett argues that he participated in a single conspiracy to steal and transport jewelry instead of a multifaceted conspiracy in which its participants stole and transported heavy equipment and jewelry, but we will not disturb the contrary finding of the jury.  "Whether a scheme is one conspiracy or several is primarily a question for the jury."  United States v. Stitzer, 785 F.2d 1506, 1518 (11th Cir. 1986).  The prosecution presented evidence that King and his cohorts had stolen and transported equipment before Garrett proposed that they steal jewelry, and the district court instructed the jury about multiple conspiracies.  The

3

jury found that Garrett joined an ongoing conspiracy in which its participants agreed to transport stolen equipment and jewelry. Substantial evidence supports the finding that the overarching goal of the conspiracy was to steal valuable goods and peddle them in different states. See Edouard, 485 F.3d at 1347.

Even if we were to assume that the district court erred by admitting evidence of uncharged bad acts, Fed. R. Evid. 404(b), by allowing King to testify that Garrett offered to sell him three stolen skid loaders before joining the conspiracy, the error was harmless. We cannot say that the evidence had a "substantial and injurious effect" on the jury. See United States v. Phaknikone, 605 F.3d 1099, 1109 (11th Cir. 2010). The prosecution introduced substantial evidence that Garrett eagerly joined King's conspiracy to transport stolen goods and that Garrett coordinated the theft of his customer's jewelry with the intent to sell it in another state.

The district court also did not err by instructing the jury that Garrett could be held responsible for the transportation of the stolen jewelry by his cohorts, under Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180 (1946). Ample evidence existed from which the jury could find that Garrett could reasonably foresee that a coconspirator would transport the jewelry to another state. See United States v. Alvarez, 755 F.2d 830, 848–49 (11th Cir. 1985). Garrett knew that his coconspirators regularly transported stolen goods to other states, and he could have

4

anticipated that his coconspirators would do so after Garrett was unable to sell the stolen jewelry in his pawn shop.  The district court "did not err by submitting the Pinkerton issue to the jury."  Id. at 849.

We **AFFIRM** Garrett's convictions.